UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-cv-21820-ALTONAGA/O'SULLIVAN

ROBERTO MOREIRA,
and others similarly situated,

       Plaintiff(s),

  v.

AMERICAN AIRLINES, INC.,

       Defendant.

_____/

**DEFENDANT AMERICAN AIRLINES, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................. 1

II.   PROCEDURAL BACKGROUND ........................................................................................ 2

III.   STATEMENT OF UNDISPUTED FACTS ......................................................................... 2

    A.   Background ................................................................................................................ 2

    B.   Evidence Submitted In Support of American's Motion ........................................... 2

IV.   LEGAL STANDARD ........................................................................................................... 5

V.   ARGUMENT ........................................................................................................................ 6

    A.   American is Entitled to Summary Judgment on Count I Because Plaintiff is Not Disabled and American Did Not Discriminate Against Him. ....................... 6

        1.   Plaintiff Is Not Disabled. ............................................................................... 7

        2.   American Did Not Discriminate Against Plaintiff ....................................... 9

    B.   American is Entitled to Summary Judgment on Count II Because Plaintiff Cannot Establish Any of the Required Elements for a Prima Facie Case of Disability Retaliation. ............................................................................................... 11

        1.   Plaintiff Did Not Engage in Protected Expression. ................................... 11

        2.   Plaintiff's Decision to End His Employment Is Not an Adverse Employment Action. ................................................................................... 12

        3.   Plaintiff Cannot Causally Link his Termination or the CDD Letter to a Statutorily Protected Expression. ......................................................... 13

        4.   Even if Plaintiff Could Establish a Prima Facie Claim, American Had a Legitimate Reason to Issue the CDD Letter, and Plaintiff Cannot Establish Pretext. ............................................................................ 13

    C.   American is Entitled to Summary Judgment on Count III Because, as an Employee of an Air Carrier, Plaintiff Is Exempt from the FLSA's Overtime Provisions ................................................................................................. 14

VI.   CONCLUSION ................................................................................................................... 16

Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | t 305.358.5171

776786

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant American Airlines, Inc. ("American" or the "Company") moves for entry of final summary judgment as to all claims asserted by Plaintiff Roberto Moreira ("Plaintiff").

## I.   INTRODUCTION

In May 2014, Plaintiff's supervisor walked into his work area and caught him sleeping on the job—with his head lying motionless on his jacket, which he was using as a cushion. When Plaintiff woke up, he told his supervisor he had been sleeping. Although American could have fired Plaintiff on the spot, it gave him the choice of continuing his employment by signing an agreement confirming he would follow the Company's rules going forward; resigning with certain benefits; or termination. Plaintiff chose termination.

Now, Plaintiff claims that American discriminated and retaliated against him on the basis of a purported disability—neck spasms—in violation of the Florida Civil Rights Act ("FCRA"). First, he alleges that American failed to accommodate his neck spasms. But during Plaintiff's employment, he never told his supervisor about his neck spasms and never asked for an accommodation based on them. Plaintiff did ask his supervisor for a different type of keyboard drawer, and other changes to his work area, but never suggested he was requesting those changes due to neck spasms or any other condition. In any event, American gave Plaintiff the keyboard drawer he requested, and Plaintiff admits he made no requests and had no issues after that.

Second, he claims that he worked more than others and American should have hired someone to help him. Plaintiff, however, has not and cannot identify anyone who was similarly situated and had less work to do. In fact, Plaintiff admits that he did not even know his co-workers' workloads.

Third, Plaintiff claims that the investigation into his sleeping at work and subsequent termination were somehow a pretext and in retaliation for requesting accommodations. But Plaintiff admits sleeping on the job is expressly prohibited by American's rules and can result in immediate termination—and he does not have a shred of evidence even suggesting, much less demonstrating, pretext. And critically, Plaintiff chose termination.

Plaintiff also tacks on a wage and hour claim alleging that American violated the Fair Labor Standards Act's ("FLSA") overtime provisions, claiming he worked more than 40 hours in some weeks and should be paid overtime for those hours. Plaintiff's FLSA claim fails as a

matter of law because, as an employee of an air carrier subject to the Railway Labor Act, he is exempt from the FLSA's overtime provisions.

Accordingly, American is entitled to summary judgment on all three counts.

## II.   PROCEDURAL BACKGROUND

On April 13, 2015, Plaintiff filed this lawsuit in the Eleventh Judicial Circuit Court for Miami Dade County, Florida.  On May 14, 2015, American removed the lawsuit to this Court. [ECF No. 1].  On May 29, 2015, American moved to dismiss Plaintiff's FLSA's claim on the ground that American is a common carrier by air exempted from the FLSA's overtime provisions.  [ECF No. 17.]  On June 24, 2015, the Court denied the motion holding that Plaintiff was not required to negate the application of an FLSA exemption, which is an affirmative defense, at that stage of the litigation.  [ECF No. 26.]  The parties then proceeded with and completed discovery.  On November 4, 2015, Plaintiff fired his attorneys and now proceeds *pro se*.  [ECF Nos. 39, 51].

## III.   STATEMENT OF UNDISPUTED FACTS

### A.   Background

American is a commercial airline that maintains operations at airports throughout the country.  Statement of Material Facts ("SMF") ¶ 1.  Plaintiff worked in American's Miami International Airport ("MIA") hub as a Staff Assistant—Production Support in the Aircraft Maintenance Department from February 2011 until May 2014.  *Id.* ¶¶ 2, 15.  Plaintiff's job responsibilities included communicating with mechanics at a customer service window, retrieving and filing payroll overtime paperwork for mechanics, entering data related to mechanics' payroll, and answering telephones and e-mails.  *Id.* ¶ 3.

### B.   Evidence Submitted In Support of American's Motion

#### 1.   *Plaintiff's Sleeping on the Job and Resulting CDD Letter*

Plaintiff's supervisor during the relevant time period was Sandra Davis.  *Id.* ¶ 4.  Plaintiff testified that he had a good working relationship with Ms. Davis, trusted her judgment, felt she was approachable, and appreciated that she treated him with respect.  *Id.*  On April 30, 2014, Ms. Davis walked into Plaintiff's work area and saw him lying motionless with his head down on his

-2-

desk. *Id.* ¶ 6. Plaintiff had his head lying on his jacket, and was using it as a cushion. *Id.* When Plaintiff finally raised his head, Ms. Davis asked what he had been doing, and Plaintiff replied that he had been sleeping. *Id.* ¶ 7. Plaintiff was fully aware at that time that he could be fired for sleeping on the job in violation of American's Rules of Conduct. *Id.* ¶ 5. Ms. Davis told him that they would speak about the incident later that day. *Id.* ¶ 7. That afternoon, Ms. Davis called Plaintiff into her office, and Plaintiff again confirmed that he had indeed been sleeping. *Id.* ¶ 8. After the meeting, Ms. Davis suspended Plaintiff with pay pending an investigation into the incident. *Id.*

On May 6, 2014, Ms. Davis interviewed Plaintiff as part of the investigation. *See id.* ¶ 10. At the conclusion of that meeting, Plaintiff submitted a written statement in which he acknowledged that he had told Ms. Davis he was sleeping on April 30, 2014, but also claimed, for the first time, that he had not actually been asleep, but was only resting his head. *Id.* Ironically, while claiming he only had his head down but was conscious, Plaintiff also states that the reason he told Ms. Davis he was sleeping is because he had not slept the night before because of fraudulent activity involving his bank account. *Id.*

Despite Plaintiff's own admission that he was sleeping while at work, Ms. Davis also interviewed four of Plaintiff's colleagues (three staff assistants and one member of management), all of whom submitted written statements. *Id.* ¶¶ 9, 11–12. Plaintiff testified that he had good working relationships with the other staff assistants and never had reason to question their integrity. *Id.* ¶ 9. Nick Bonnet, a staff assistant who worked with Plaintiff, saw Plaintiff with his head down, sleeping, on April 30, 2014. *Id.* ¶ 11. He also confirmed he had seen Plaintiff sleep in the office on other occasions. *Id.* Vanessa Perez, a staff assistant who worked with Plaintiff, also saw Plaintiff sleeping on April 30, 2014, and confirmed that this was one of many instances in which she had seen him sleep on the job. *Id.* Edwin Perez, another staff assistant who worked with Plaintiff, saw Plaintiff put his head down to rest on April 30, 2014, and had previously seen him sleep in the office. *Id.* Only one colleague stated that she had never personally witnessed Plaintiff sleep on the job. *Id.* ¶ 12.

Based on the investigation, Ms. Davis concluded that Plaintiff had violated American's Rules of Conduct by sleeping on the job. *Id.* ¶ 13.[1] Ms. Davis could have terminated Plaintiff immediately for sleeping while at work. *See id.* ¶ 14. Nevertheless, Ms. Davis decided to give Plaintiff a second chance, and issued Plaintiff a Career Decision Day ("CDD") letter. *Id.* The CDD gave Plaintiff a paid day off to consider his career at American and offered him three options. *Id.* First, he could sign a commitment to the Company agreeing simply to follow American's rules. *Id.* Plaintiff—and all employees at American—are obligated to follow American's rules. *See id.* ¶¶ 5, 14. Second, he could resign with certain transition benefits. *Id.* ¶ 14. Or, third, Plaintiff could be terminated and grieve the termination. *Id.*[2] The CDD letter informed Plaintiff that if he failed to respond, the Company would assume that he chose termination. *Id.* Rather than continue his employment with the Company, or resign with benefits, Plaintiff chose not to respond to the letter and was therefore terminated. *Id.* ¶ 15.

### 2.   *Plaintiff's Purported Disability*

According to Plaintiff, he developed neck spasms in November 2013. *Id.* ¶ 17. Although Plaintiff's neck spasms purportedly affected his concentration and energy at work, *id*. ¶ 18, Plaintiff testified in his deposition that his spasms did not affect his job performance, his ability to meet his professional obligations, or maintain daily attendance at work. *Id.* ¶ 17. In fact, Plaintiff went so far as to testify that he performed his work reliably and efficiently. *Id.* And, although the spasms sometimes made his vision blurry, he could still read and had no difficulty driving or caring for himself. *Id.* ¶ 18. Further, he was in no way limited in breathing, hearing, speaking, walking, sitting, standing, reaching, driving, dressing, showering, cleaning, shopping, or learning. *Id.* ¶ 17. He could engage in normal physical activity, and socialize with his friends.

---

[1] American's prohibition against sleeping at work applies regardless of location and regardless of whether the employee is on break or lunch. *See* SMF ¶ 5.

[2] For non-union employees like Plaintiff, American had a grievance process during the relevant time period that allowed employees to appeal certain employment decisions, including terminations. Pl. Dep. Ex. 1 at AA0000020. Plaintiff appealed his termination to Deon Lawrence ("Lawrence"), American's Director of Aircraft Maintenance at MIA. SMF ¶ 16. On July 1, 2014, after meeting with Plaintiff and reviewing the Rules of Conduct and investigation file, Lawrence determined that the CDD letter was justified and denied Plaintiff's appeal. *Id.*

*Id.*  Plaintiff has not alleged that his neck spasms caused him to be drowsy on April 30, 2014; he stated that he was tired because had not slept well the previous night after discovering fraudulent activity on his bank account.  *Id.* ¶ 10.

### 3.     *Plaintiff's Purported Requests For An Accommodation*

According to Plaintiff, he requested accommodations for his neck spasms from American and those accommodations were not granted.  1st Am. Compl. ("FAC") ¶ 8 [ECF No. 13].  But, his supervisor did not know about the neck spasms.  SMF ¶ 21.  Plaintiff never told Ms. Davis about them, and by his own admission, Plaintiff's spasms were inconspicuous.  *Id.* ¶ 20.

In 2014, Plaintiff asked Ms. Davis if he could move to a different desk.  *Id.* ¶ 22. Plaintiff, however, never told her that the request was due to his neck spasms or any other condition.  *Id.* ¶ 21.  Ms. Davis denied this request because she believed it was necessary for Plaintiff to be near the window to perform his job of assisting mechanics at the window. *Id.* ¶ 22.  Plaintiff next asked Ms. Davis for a new keyboard drawer.  *Id.* ¶ 23.  Plaintiff never told Ms. Davis why he wanted the new drawer, and Ms. Davis did not ask.  *Id.* ¶¶ 21, 23. Instead, Ms. Davis simply gave him a new keyboard drawer.  *Id.* ¶ 23.  By Plaintiff's own account, once he received the keyboard drawer, he never asked to switch desks again.  *Id.* Plaintiff also claims that he asked Ms. Davis to hire additional staff assistants to help with the office workload because he believed the office was understaffed.  *Id.* ¶ 24.  Plaintiff testified that this purported understaffing affected everyone in the office (not just him), and that he was not entirely familiar with other staff assistants' workloads, which could have at times been heavier than his workload.  *Id.*  Again, Plaintiff never said he needed more help due to neck spasms or any medical condition.  *Id.* ¶ 21.  Plaintiff made no other requests.  *Id.* ¶ 25.

The undisputed facts in this matter are straightforward.  And as detailed below, based on these undisputed facts, American is entitled to summary judgment on all counts.

## IV.    LEGAL STANDARD

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (summary judgment should be granted unless there is evidence on which a jury could reasonably find for the non-moving

-5-

party).  A non-moving party cannot avoid summary judgment based on "bare assertions, conclusory allegations, surmises or conjectures." *Serrano v. United States*, No. 07–cv–22346, 2008 WL 4541003, at *2 (S.D. Fla. Oct. 9, 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  Rather, to avoid summary judgment, the non-moving party "must come forward with affirmative evidence" to support his claims. *Harris v. Dugger*, 757 F. Supp. 1359, 1361 (S.D. Fla. 1991) (citing *Anderson*, 477 U.S. at 257).

V.  **ARGUMENT**

American is entitled to summary judgment on all counts.  American is entitled to summary judgment on Count I for disability discrimination because (i) Plaintiff is not disabled as a matter of law; (ii) even assuming for the sake of argument that he is disabled, he never linked any of his requests for accommodation to his purported disability, and (iii) even further assuming for the sake of argument that he had done so, American provided Plaintiff with a new keyboard drawer which he admitted resolved the issue and he also admits that he was treated the same as everyone else in terms of his workload.

American is entitled to summary judgment on Count II for retaliation because Plaintiff cannot establish a single element required to state a prima facie case of retaliation.  Further, even assuming for the sake of argument that Plaintiff could establish a prima facie case, Plaintiff has not offered a shred of evidence that the issuance of the CDD letter was a pretext for retaliation.

And American is entitled to summary judgment on Count III for violation of the overtime provisions of the FLSA because as an employee of an air carrier, Plaintiff is expressly exempted from the overtime requirements of the FLSA.

A.  **American is Entitled to Summary Judgment on Count I Because Plaintiff is Not Disabled and American Did Not Discriminate Against Him.**

In Count I, Plaintiff claims that American discriminated against him on the basis of a disability by refusing to accommodate him with a different desk and imposing a disparately high workload on him.  FAC ¶¶ 4, 6–8 [ECF No. 13].  To establish a prima facie case of disability discrimination under the FCRA, Plaintiff must demonstrate that he was (1) disabled; (2) qualified to perform his job; and (3) subject to unlawful discrimination because of his disability. *Spears v. Creel*, 607 F. App'x 943, 944 n.1, 948 (11th Cir. 2015) (construing FCRA "under same

framework as [the American with Disabilities Act (ADA) and ADA regulations]" and noting that Florida courts rely on the ADA to analyze FCRA discrimination claims).

### 1. *Plaintiff Is Not Disabled.*

Under FCRA, a physical condition can only be considered a disability if it "substantially limits" a major life activity, such as working, caring for oneself, the operation of a major bodily function, performing manual tasks, and other necessary functions. *See* 29 C.F.R. 1630.2(i)(1)(i)–(ii). Although courts broadly interpret the term "substantially limits" under the 2009 ADA amendments, "not every impairment will constitute a disability" and the impairment must "substantially limit the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. 1630.2(i)(1)(i)–(ii).

Plaintiff testified that he did not experience any limitation in the following activities as a result of his neck spasms: breathing, hearing, speaking, walking, reaching, driving, dressing, showering, cleaning, shopping, learning, and socializing with friends. SMF ¶ 17. Rather, Plaintiff asserts that his neck spasms affected the major life activity of working. *See id.* ¶ 18. But Plaintiff's own admissions confirm that he is not substantially limited in his ability to perform his job. For example, Plaintiff testified that his neck spasms never interfered with his ability to meet his daily attendance or shift requirements at work. *Id.* ¶¶ 17–18. He also testified that it did not affect his ability to type, sit, or stand—all key aspects of his job. *See id.* Moreover, Plaintiff testified in his deposition that he was an "efficient" and "reliable" employee, whose supervisors "trusted [his] work" and therefore let him operate "without . . . supervision." *Id.* And in his May 6, 2014 written statement, Plaintiff states that he is an "excellent employee, [who was] responsible and committed." *Id.* Similarly, Plaintiff states in his EEOC Charge that "at all relevant times [he] . . . perform[ed] [his] job at satisfactory or above-satisfactory levels." *Id.* These admissions directly contradict any claim that Plaintiff is substantially limited in the major life activity of working.

Plaintiff testified only that his spasms affected his ability to do certain detail-oriented work tasks at times because he sometimes had trouble concentrating, felt drowsy, and had blurry vision. *Id.* ¶ 18. But as a matter of law, fatigue, intermittent blurry vision, and lack of concentration as described by Plaintiff do not constitute a disability, especially when they do not affect job performance, personal relationships, or the ability to care for oneself. *See Gilliard v.*

*Ga. Dep't of Corrs.*, 500 F. App'x 860, 870 (11th Cir. 2012) (plaintiff's conditions were not substantially limiting; "[t]o the contrary," her "conditions did not affect her ability to perform her job."); *Martin v. Estero Fire Rescue*, No. 2:13–cv–393–FTM–29DNF, 2014 WL 3400974, at *4 (M.D. Fla. July 11, 2014) (purported depression and anxiety, which affected decision-making ability and motivation, did not constitute substantial limitations as they did not affect plaintiff's job performance, ability to carry on relationships, or care for himself); *Matthews v. Village Ctr. Comm. Dev. Dist.*, No. 5:05–cv–344–OC–10GRJ, 2006 WL 3422416, at *10 (M.D. Fla. Nov. 28, 2006) ("[plaintiff] has never claimed that she is unable to perform a broad class of jobs—it seems that her entire argument rests simply on the fact that she has [an eye condition] and that, as a result, she occasionally suffers eye strain and blurry vision. That is simply not enough.").

Plaintiff also provides no evidence as required indicating that the impact of his neck spasms was any worse than what is experienced by most adults in the general population. *See* 29 C.F.R. 1630.2(i)(1)(ii) (impairment must "substantially limit the ability of an individual to perform a major life activity as compared to most people in the general population."). Many adults, for example, have difficulty concentrating at work. *See Gilliard*, 500 F. App'x at 870 (plaintiff provided no evidence that her difficulties walking, sitting, standing, concentrating, and thinking were any worse than that suffered by other adults). Many adults also suffer blurry vision and require corrective lenses, but are not considered "substantially limited." *See* 29 C.F.R. 1630.2(i)(1)(vi) (noting that the ameliorative effect of contact lenses shall be considered in determining whether an impairment is substantially limiting).[3]

Thus, because Plaintiff is not disabled as defined by the FCRA, American is entitled to summary judgment as to Count I.

---

[3] The only other potential basis for Plaintiff's claim of disability is his testimony that his neck spasms prevented him from lifting more than 80 pounds while exercising. SMF ¶ 19. Heavy lifting was not required for Plaintiff's job, and as a matter of law, an inability to lift more than 80 pounds while exercising is not a substantial limitation. *See id.*; *see also McDonald v. City of New York*, 786 F. Supp. 2d 588, 609 (E.D.N.Y. 2011) (finding that numerous courts have held that a weight lifting restriction for 20 pounds or more is not, "as a matter of law," a substantial limitation); *Michios v. Rooms to Go Miami, Corp.*, 1997 WL 813004, at *3 (S.D. Fla. Nov. 13, 1997) ("Courts have routinely held that restrictions on heavy lifting do not substantially limit a major life activity.")

## 2. *American Did Not Discriminate Against Plaintiff.*

Even assuming for the sake of argument that Plaintiff is disabled, American is still entitled to summary judgment on Count I because, as a matter of law, Plaintiff cannot establish that American discriminated against him.

### a. **Plaintiff never linked his requests to his purported disability.**

The duty to accommodate is triggered only when an individual makes a request that is direct and specific and identifies how it is linked to a disability. *Stanley v. Lockheed Martin Corp.*, No. 6:11–cv–1649–ORL–36TBS, 2013 WL 3974655, at *11 (M.D. Fla. Aug. 1, 2013) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008)) ("request for accommodation must be direct, specific, and identify how it is linked to [a] disability"). Plaintiff claims American failed to accommodate him because it did not move him to a new desk and did not hire additional staff. But Plaintiff has produced no evidence that he made either of these purported requests to accommodate his neck spasms as he must. SMF ¶ 21. Nor can he do so because Plaintiff admits that he never even told Ms. Davis about his neck spasms. *Id.* Accordingly, to the extent Plaintiff's disability discrimination claim is based on a failure to accommodate, American is entitled to summary judgment for this reason as well. *See Stanley*, 2013 WL 3974655, at *11 (finding requested accommodation not to be connected to a disability).[4]

### b. ***Even if Plaintiff had linked his requests to his purported disability, his claim still fails.***

Moreover, even assuming for the sake of argument that Plaintiff had told his supervisor that his requests for a new desk and to hire additional employees were related to his neck spasms,

---

[4] Any attempt by Plaintiff to rely on his testimony that he purportedly told individuals in the office other than Ms. Davis about his neck spasms fails. *See Howard v. Steris* Corp., 550 F. App'x 748, 751 (11th Cir. 2013) ("discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." (citation and quotation marks omitted)); *Castellanos v. Starwood Vacation Ownership, Inc.*, No. 6:14–cv–396–Orl–40KRS, 2015 WL 403274, at *5 (M.D. Fla. Jan. 8, 2015) (rejecting argument that "knowledge of the protected conduct should be imputed to a corporation when individuals other than the decision maker had knowledge of the protected activity.").

Plaintiff still cannot establish that American failed to reasonably accommodate him. As to moving to a new desk, Plaintiff admits that American provided him with a different keyboard drawer and that this alleviated his need for a new desk. SMF ¶ 23. Thus, his discrimination claim fails for this reason as well. *See Siudock v. Volusia Cnty. Sch. Bd.*, 568 F. App'x 659, 663 (11th Cir. 2014) (An "employee is only entitled to a reasonable accommodation, not to the accommodation of his choice.").

And as to hiring more employees, Plaintiff has not demonstrated that this would be a reasonable accommodation. *See Barton v. Bd. of Regents of Univ. Sys. of Ga.*, 478 F. App'x 627, 630–31 (11th Cir. 2012) (finding plaintiff failed to demonstrate that request to hire full-time administrative assistant was a reasonable accommodation). Nor can he do so as a matter of law. *See Kaufman v. AutoNation, Inc.*, No. 99–8377–CIV, 2000 WL 35722358, at *8 (S.D. Fla. June 7, 2000) ("[employer] cannot be forced to hire additional employees . . . in order to accommodate plaintiff's disability.").

     c. **American did not treat Plaintiff differently because of his purported disability.**

Plaintiff also claims in a conclusory allegation that he was "treated different[ly] than non-disabled staff assistant[s]," because American "operated th[e] department understaffed, imposing an unfair high workload on Plaintiff." *See* FAC ¶¶ 6–7 [ECF No. 13]. But Plaintiff conceded that this would have affected everyone in the office—not just him. SMF ¶ 24. Plaintiff also conceded that he was not familiar with other staff assistants' workloads, which he admitted could have been heavier than his own workload. *Id.* Accordingly, because Plaintiff has not, and cannot, identify a similarly-situated comparator, Plaintiff cannot prevail on his disability discrimination claim on the basis of purported disparate treatment. *See Telfair v. FedEx Corp.*, 934 F. Supp. 2d 1368, 1379 (S.D. Fla. 2013) (holding Plaintiff must identify a similarly-situated comparator in a disparate treatment claim under FCRA and dismissing such claim in part by rejecting "bare conclusion[s] unsupported by any factual predicate for plaintiffs' personal knowledge of the circumstances of [their comparators]."); *Berg v. Fla. Dep't of Labor & Empl. Sec., Div. of Vocational Rehab.*, 163 F.3d 1251, 1255 (11th Cir. 1998) (finding no disparate treatment where plaintiff was treated no differently than anyone else).

Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | t 305.358.5171
776786

### B. American is Entitled to Summary Judgment on Count II Because Plaintiff Cannot Establish Any of the Required Elements for a Prima Facie Case of Disability Retaliation.

To establish a prima facie case of disability retaliation, Plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260–61 (11th Cir. 2001). Plaintiff cannot establish any of these three required elements.[5]

#### 1. *Plaintiff Did Not Engage in Protected Expression.*

Plaintiff cannot demonstrate that he engaged in protected expression as required for two reasons. First, as explained above, Plaintiff never linked his requests to his purported disability. Indeed, Plaintiff never even told Ms. Davis about his neck spasms. SMF ¶ 21. Second, even assuming for the sake of argument that he had done so, a request for accommodation can only be considered a protected expression if the employee has a good-faith, reasonable belief that he is entitled to the accommodation as a result of a disability that substantially limits a major life activity. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (mere assertion that back injury was a disability, without grounds for the conclusion, did not demonstrate a good faith reasonable belief in entitlement to accommodations under the ADA). Plaintiff cannot demonstrate that he had such an objectively reasonable belief because his own testimony demonstrates that his purported disability had only minimal impact on his life. *See Little v. United Techs., Carrier Transcold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (it is "not enough for a plaintiff to allege that his belief . . . was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable"); *see also Leone v. Alliance Foods, Inc.*, No. 8:14–cv–800–T–27TBM, 2015 WL 4879406, at *8

---

[5] FCRA applies the same retaliation analysis as the ADA, which in turn uses the same framework as Title VII of the Civil Rights Act of 1964 ("Title VII"). Florida courts look to case law analyzing both ADA and Title VII claims when analyzing FCRA retaliation claims. *See Greenberg v. BellSouth Comm'ns, Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007) ("Claims raised under the [FCRA] are analyzed under the same framework as the ADA"); *Standard*, 161 F.3d at 1328 (applying Title VII framework).

(M.D. Fla. Aug. 14, 2015) (plaintiff's belief that he had substantial limitations as a result of an eye injury that did not "totally impair[]" his vision was not objectively reasonable).

### 2. *Plaintiff's Decision to End His Employment Is Not an Adverse Employment Action.*

American is entitled to summary judgment on Plaintiff's retaliation claim for the additional reason that a voluntary decision by an employee to end an employment relationship is not an adverse employment action. *See Santandreu v. Miami Dade Cnty.*, 513 F. App'x 902, 906 (11th Cir. 2013) (no adverse employment action where employer gave employee a disciplinary action report with three options—return to work, resign, or termination—and employee chose to resign). Although Plaintiff now claims that the choices provided in the CDD letter were unfair, this is irrelevant. It is undisputed that Plaintiff had the opportunity to continue his employment, but chose instead not to respond to the CDD letter and terminate the relationship by default. And that is all that matters. *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("Resignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff *had a choice*." (emphasis in original)).

The Tenth Circuit reviewed American's CDD letter in *Rollins v. Am. Airlines, Inc.*, which like here, gave plaintiff a paid day off to choose one of three options:

> (1) a commitment to meet all company standards, and thus to continue employment with American [after a transfer to another position];
> (2) voluntary resignation, with specified benefits, in exchange for which the employee agrees not to exercise his right to internally appeal or grieve the company's determination; or (3) a refusal to choose either option, which results in termination with the ability to grieve.

279 F. App'x 730, 734 (10th Cir. 2008). Also like here, the plaintiff in *Rollins* refused to select an option, thereby accepting termination by default. *Id.* The Tenth Circuit rejected plaintiff's argument that the letter constituted an adverse employment action simply because he thought all of the options under the letter were undesirable. *Id.* at 735 n.6 ("A blanket refusal to accept the advisory was manifestly a choice to terminate employment."). Here too, Plaintiff's termination by default was not an adverse action because it directly resulted from his refusal to select an

option. Plaintiff's retaliation claim fails as a matter of law for this reason as well. *See Santandreu*, 513 F. App'x at 906; *Hargray*, 57 F.3d at 1568.

### 3. *Plaintiff Cannot Causally Link his Termination or the CDD Letter to a Statutorily Protected Expression.*

Disability-retaliation claims require a plaintiff to meet the heightened "but-for" causation standard—i.e., that "but-for" the requested accommodation, the purportedly retaliatory act would not have occurred. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (applying but-for causation standard to retaliation claim); *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 902 (11th Cir. 2015) (same). Plaintiff cannot satisfy this standard because he admits that he proximately caused his own termination by failing to respond to the CDD letter. *See* SMF ¶ 15. Accordingly, there is no legal or factual basis for Plaintiff's claim that "but-for" his requested accommodation he would not have been terminated. *See Schoebel v. Am. Integrity Ins. Co. of Fla.*, No. 8:14–cv–426–T–27AEP, 2015 WL 4231670, at *7 (M.D. Fla. July 10, 2015) (finding proximate cause of discipline was employee's own actions).

Plaintiff also fails to demonstrate any link—let alone a "but-for" causal link—between his purported requests for accommodation and his CDD letter. Rather, the undisputed evidence demonstrates that Plaintiff received a CDD letter because his supervisor caught him sleeping on the job and a subsequent investigation revealed that several employees had witnessed him sleeping on multiple occasions. *See id.* (noting intervening misconduct severs causal connection between protected activity and termination); *see also Hegre v. Alberto-Culver USA, Inc.*, 508 F. Supp. 2d 1320, 1335 (S.D. Ga. 2007) (finding discipline had no relationship to request for accommodation during understaffed operations).

### 4. *Even if Plaintiff Could Establish a Prima Facie Claim, American Had a Legitimate Reason to Issue the CDD Letter, and Plaintiff Cannot Establish Pretext.*

Even if Plaintiff could somehow establish a prima facie case of retaliation, his claim would still fail because American issued the CDD letter for a legitimate, non-discriminatory reason and Plaintiff has no evidence whatsoever of pretext. *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 2012) (burden of articulating legitimate, non-discriminatory reasons is "exceedingly light" and an employer is only required to proffer those reasons—not

-13-

prove them.). American's decision to give Plaintiff a CDD letter directly resulted from Plaintiff's sleeping on the job—as witnessed by his manager and multiple co-workers—which Plaintiff admits is a terminable offense. SMF ¶¶ 5–14; *see Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) (termination for sleeping on the job is a legitimate, nondiscriminatory business reason).

Accordingly, Plaintiff must demonstrate that the proffered reason for disciplining him was pretext for unlawful retaliation. But there is not a shred of evidence supporting such a proposition. At his deposition, the only basis for pretext identified by Plaintiff was his own personal belief that he received the CDD letter because he requested certain accommodations. *See* SMF ¶¶ 21–24. Such conclusory assertions are insufficient to establish pretext. Indeed, if a plaintiff could establish pretext solely based on his unsubstantiated personal beliefs, an employer could never be granted summary judgment. That is not the law. *See*, *e.g.*, *Proe v. Facts Servs., Inc.*, 491 F. App'x 135, 137 (11th Cir. 2012) (plaintiff cannot show pretext by simply "recast[ing] the reason" for an employer's actions"); *Leone*, No. 8:14–cv–800–T–27TBM, 2015 WL 4879406, at *10 (finding "no evidence, only argument, in support of pretext"); *Stanley*, No. 6:11–cv–1649–ORL–36TBS, 2013 WL 3974655, at *22 (finding plaintiff's belief of retaliation to be conjecture and insufficient to show pretext).

### C. American is Entitled to Summary Judgment on Count III Because, as an Employee of an Air Carrier, Plaintiff Is Exempt from the FLSA's Overtime Provisions.

Plaintiff's FLSA overtime claim is meritless because the FLSA exempts from its overtime requirements "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act." *See* 29 U.S.C. § 213(b)(3). The Railway Labor Act ("RLA"), in turn, covers "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C. § 181. American holds an Air Carrier Certificate from the Federal Aviation Administration, which authorizes American to operate as a common carrier by air. *See* 14 C.F.R. §§ 119.5, 121.1 *et seq.*[6] As such, there can be no dispute that American is a common carrier covered by the RLA. *See, e.g.*, *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1354 (S.D. Fla. 2004)

---

[6] American's current Air Carrier Certificate (No. AALA025A) was issued in 1954. *See* Airline Certificate Information, *available at* http://av-info.faa.gov/OperatorsName.asp.

("American Airlines is an air carrier governed by the RLA."); *Verrett v. Sabre Grp., Inc.*, 70 F. Supp. 2d 1277, 1279 (N.D. Okla. 1999) (American is an "air carrier[]" and like its related companies "American, American Eagle Airlines, Inc., and AMR Services, Inc. [are all] subject to the RLA."); *Slavens v. Scenic Aviation, Inc.*, No. 99–4197, 2000 WL 985933, at *1 (10th Cir. July 18, 2000) (finding that a certificated air carrier was "governed by the RLA and exempt from the overtime provisions of the FLSA.").

As a result, courts, including the Eleventh Circuit, routinely dismiss on summary judgment claims of airline employees such as Plaintiff who sue for overtime payments under the FLSA based on the plain language of Section 213(b)(3) of the FLSA. *See, e.g.*, *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002) (dismissing FLSA overtime claim by cargo loadmasters against carrier and finding that "the statutory language is certainly unambiguous"); *Thibodeaux v. Exec. Jet Int'l*, 328 F.3d 742, 754 (5th Cir. 2003) ("Because EJI is a 'common carrier by air' subject to Title II of the RLA, the FLSA exempts the company's flight attendants from its overtime requirements."); *Osborne v. Enchantment Aviation, Inc.*, 112 F. App'x 673, 675 (10th Cir. 2004) (rejecting air ambulance service operator's overtime claims and finding "the plain text of the FLSA exemption at issue, § 213(b)(3), and of the RLA, make it clear that Southwest is an air carrier excused from the FLSA's overtime pay provisions." (citations and internal quotation marks omitted)); *Slavens*, No. 99–4197, 2000 WL 985933, at *2 (rejecting argument by air ambulance company vice president of medical operations that his duties, which did not include any "day-to-day responsibilities over any pilots or airplanes, []or any knowledge of when various flights were taking place," were not related to air carrier services); *Caggianiello v. FSG Privatair, Inc.*, No. 03–1011, 2007 WL 1058473, at *2 (D. Conn. Apr. 6, 2007) (granting defendant carrier's motion to dismiss FLSA overtime claim); *Verrett*, 70 F. Supp. 2d at 1283 (finding plaintiff to be exempt from the FLSA's overtime provisions). Because American is a common carrier covered by the RLA, Plaintiff is exempt from the FLSA's overtime provisions and has no claim against American.

Plaintiff may again argue that he is not exempt because his job does not require him to be physically present on an airplane or coordinate passenger and/or flight attendant travel. *See* Pl. Opp. to Def. Am. Airline, Inc.'s Motion to Dismiss Count III [ECF No. 23]. Any such argument fails. The exemption broadly covers any employee working for a commercial air carrier operation covered by the RLA. *See Slavens*, No. 99–4197, 2000 WL985933, at *2 (finding vice

-15-

president who reviewed qualifications and background of applicants and established policies and procedures for an air ambulance company covered by the exemption); *Verrett*, 70 F. Supp. 2d at 1279–80 (support personnel working on various systems for air carriers were covered by the exemption); *Osborne*, 112 F. App'x at 674 (an emergency medical technician paramedic and a registered nurse working for an air ambulance service were covered by the exemption).[7]  No case suggests that an employee must be physically present on an aircraft for the exemption to apply. *See id.*  And, the record evidence shows that Plaintiff's job duties were directly related to American's airline operations—he was responsible for processing payroll matters for mechanics (without whom the airline could not operate).  *See* SMF ¶ 3; 14 C.F.R. §§ 121.361–380 (establishing requirements for aircraft maintenance and reporting by certificated mechanics).  Accordingly, American is entitled to summary judgment on Count III as a matter of law.

## VI.   CONCLUSION

For the foregoing reasons, each of Plaintiff's claims fails as a matter of law or for lack of supporting evidence.  The Court should therefore enter summary judgment for American and grant such other and further relief as the Court deems just and proper.

Dated: December 16, 2015                                  Respectfully submitted,

**SHOOK HARDY & BACON, LLP**
201 Biscayne Boulevard, Suite 3200
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

By     /s/ Michael A. Holt
Humberto H. Ocariz
Fla. Bar No.: 740860
hocariz@shb.com
Michael A. Holt
Fla. Bar No.: 91156
mholt@shb.com

---

[7] The only exception is that the exemption does not allow an airline to operate a subsidiary wholly unrelated to its commercial air carrier operations and avoid the FLSA. *See Northwest Airlines, Inc. v. Jackson*, 185 F.2d 74, 76 (8th Cir. 1950).

    and

    Mark W. Robertson (*Admitted Pro Hac Vice*)
    Daniel J. Franklin (*Admitted Pro Hac Vice*)
    **O'MELVENY & MYERS LLP**
    Times Square Tower, 7 Times Square
    New York, New York 10036
    Telephone: (212) 326-2000
    mrobertson@omm.com
    dfranklin@omm.com

    *Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2015, a true and correct copy of the foregoing document served on all counsel or parties of record on the Service List below by the method indicated.

   /s/ Michael A. Holt
      Michael A. Holt

## SERVICE LIST

Robert Moreira
495 SW 84th Avenue
Miami, Florida
Telephone: (787) 220-9974
robertmoreira69@gmail.com

*Pro Se Plaintiff*
(Service via e-mail and U.S. Mail)

Humberto H. Ocariz, Esq.
Michael A. Holt, Esq.
**SHOOK, HARDY & BACON L.L.P.**
201 South Biscayne Boulevard, Suite 3200
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470
hocariz@shb.com
mholt@shb.com

Mark W. Robertson, Esq.
Daniel J. Franklin, Esq.
(*Admitted Pro Hac*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
mrobertson@omm.com
dfranklin@omm.com

*Attorneys for American Airlines, Inc.*
(Service via e-mail)