UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21820-CIV-ALTONAGA/O'Sullivan

**ROBERT MOREIRA**,

    Plaintiff,
v.

**AMERICAN AIRLINES, INC.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, American Airlines, Inc.'s ("American['s]") Motion for Summary Judgment ("Motion") [ECF No. 63], filed on December 16, 2015. *Pro se* Plaintiff, Robert Moreira ("Moreira") filed an Opposition . . . ("Response") [ECF No. 70], on January 5, 2016. American filed a Reply . . . ("Reply") [ECF No. 71] on January 7, 2016. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I.     BACKGROUND[1]

American is a commercial airline that flies to destinations around the world. (*See* American's Statement of Undisputed Material Facts . . . ("Def.'s SMF") [ECF No. 65] ¶ 1). In February 2011, American hired Moreira as a non-union Staff Assistant-Production Support employee in the Aircraft Maintenance Department of Miami International Airport. (*See id.* ¶ 2; *see also* First Amended Complaint ("FAC") [ECF No. 13] ¶ 5). Plaintiff's responsibilities included: communicating with mechanics at a customer service window regarding attendance, overtime, or schedules; retrieving and filing payroll overtime paperwork for mechanics; entering

---

[1] Pursuant to Local Rule 56.1, undisputed facts set forth by the movant and supported by evidence in the record are deemed admitted.

data related to mechanics' payroll (*e.g.*, coding sick time); filling out Miami Dade County and Customs paperwork; programming ID badges; and answering telephones and e-mails. (*See* Def.'s SMF ¶ 3; *see also* Resp. 1–2). Moreira was supervised by Sheryl Beil ("Beil"), who reported to Sandra Davis ("Davis"), the Production Support Manager in the department. (*See* Def.'s SMF ¶ 4; *see also* Deposition of Roberto Moreira ("Moreira Deposition") [ECF Nos. 64-1 (vol. I) and 64-2 (vol. II)] vol. II, 198:12–20). Davis and Moreira had a good professional relationship; Davis trusted Moreira and made positive comments about his work. (*See* Def.'s SMF ¶ 4; *see also* Moreira Dep., vol. I, 87:7–14).

According to Moreira, he developed muscle spasms in early 2013 and was diagnosed in November 2013. (*See* Def.'s SMF ¶ 17; *see also* Moreira Dep., vol. I, 32:3–39:21). He states these spasms intermittently affected his concentration and energy at work, and sometimes made his vision "a little bit" blurry. (Moreira Dep., vol. I, 59:19–22; *see also* Def.'s SMF ¶ 18). Moreira explains these spasms did not limit his ability to perform the following activities while working for American: breathing, hearing, speaking, walking, sitting, standing, reaching, driving, dressing, showering, cleaning, and shopping. (*See* Def.'s SMF ¶ 17). Further, Moreira states the spasms did not interfere with his ability to meet his professional obligations or daily attendance at work; he performed his work reliably and efficiently. (*See id.*). Davis agrees Moreira was a good employee and capable of performing his job duties. (*See* Deposition of Sandra Davis ("Davis Deposition") [ECF No. 64-7] 39:14–21).

Moreira admits he never directly informed Davis about his muscle spasms; he just told her he was going to physical therapy. (*See* Moreira Dep., vol. II, 198:12–14). He states he notified Beil about his purported disability. (*See id.* 198:2–25). Moreira also asserts he notified Maribel Maceo-Chavez ("Maceo-Chavez"), the Department's Lost Time Manager, of his

purported disability; and his doctor faxed Family and Medical Leave Act ("FMLA") paperwork to Maceo-Chavez's office.[2] (*See* Resp. 2–3). In this paperwork, Moreira requested FMLA leave due to his muscle spasms. (*See id.* 6). The paperwork includes a note from Moreira's doctor stating: "Patient is unable to concentrate and stressful situations worsens [sic] his condition during periods of exacerbation." (*Id.* 8). Aside from Beil and Maceo-Chavez's direct knowledge of Moreira's purported disability and Davis's alleged indirect knowledge, Moreira states no one at American perceived him as disabled during his employment, as his muscle spasms were inconspicuous. (*See* Def.'s SMF ¶ 20; *see also* Moreira Dep., vol. II, 302:16–21, 267:4–22).

### A. Moreira's Alleged Requests for Accommodation

In approximately December 2013, Moreira asked Beil if he could move to another desk in the office, and she agreed. (*See* Moreira Dep., vol. II, 165:22–167:21). However, Davis later called the office and stated Moreira could not move to that desk because it was going to be used for another purpose, and Moreira needed to stay at the front desk to manage the customer window. (*See id.* 166:9–15). Moreira never informed Davis he wanted to move desks to accommodate his purported disability. (*See* Def.'s SMF ¶ 21). In fact, Davis recollects Moreira simply wanted to move desks because he did not like being up at the front window. (*See* Davis Dep. 60:7–15).

Shortly thereafter, Moreira requested a keyboard drawer, and this request was granted. (*See* Moreira Dep., vol. II, 168: 3–18). Davis did not inquire why Moreira wanted a keyboard drawer because employees often asked to upgrade office supplies. (*See* Def.'s SMF ¶ 23). Moreira testified the keyboard drawer alleviated most of the issues he had experienced with the

---

[2] Moreira's testimony indicates this paperwork may have never been received by American's Lost Time Department. (*See* Moreira Dep., vol. II, 273:10–13 (Question: "You did check once to see if the FMLA paperwork had been received and you learned that it had not been received - - Answer: Correct.")).

desk; and he did not make any subsequent requests to move desks. (*See* Moreira Dep., vol. II, 170:10–174:12).

At some point during Moreira's employment, two staff assistants left the office and were not replaced. (*See* Def.'s SMF ¶ 24). Moreira requested Davis hire additional staff assistants to help with the office workload, but Davis declined. (*See id.*; *see also* Moreira Dep., vol. II, 179:1–8). The alleged understaffing affected everyone in the office, not just Moreira. (*See* Def.'s SMF ¶ 24). Moreira admits he did not know the other staff assistants' workloads, and concedes they could have been heavier than his own, at times. (*See id.*).

**B. The Alleged Sleeping Incident and Moreira's Termination**

On April 30, 2014, Davis entered the administrative office where Moreira worked and observed Moreira, motionless, with his head down at his desk, using his jacket as a cushion. (*See* Def.'s SMF ¶ 6). When Moreira raised his head, Davis asked him if he had been sleeping; Moreira responded, "yes," and explained he had not slept the night before. (Moreira Dep., vol. I, 143:12–144:4; *see also* Def.'s SMF ¶ 7). Davis told Moreira they would talk about the incident later. (*See* Def.'s SMF ¶ 7). Later that afternoon, Davis called Moreira into her office and informed him she was suspending him with pay pending an investigation into the incident. (*See id.* ¶ 8; *see also* FAC ¶ 9). During this meeting, Moreira confirmed he understood sleeping at work was against company policy. (*See* Def.'s SMF ¶ 8).

In investigating the incident, Davis re-interviewed Moreira on May 6, 2014. (*See id.* ¶¶ 9–10). Moreira submitted a written statement at this time, arguing he was not actually sleeping at his desk, but rather just resting his head during his lunch break because he was not feeling well. (*See id.* ¶ 10; *see also* American Airlines Investigation Report ("Investigation Report") [ECF No. 64-3] AA0000023). He asserts he did not explain the situation to Davis when she

found him at his desk because he wanted to avoid entering into specifics while there were other employees around. (*See* Investigation Report AA0000023). During his deposition, Moreira acknowledged sleeping on the job is not permitted during lunch breaks or any other time. (*See* Def.'s SMF ¶ 10). In his written statement, Moreira also briefly referred to his muscle spasm condition, explaining, "in the past, even during a time where [sic] I was suffering a chronic condition of neck muscle spasms, in which I was going through therapy and strong medications, I came to work and always completed my work efficiently." (Investigation Report AA0000025).

Davis also interviewed four of Moreira's colleagues, including Beil, as part of her investigation. (*See* Def.'s SMF ¶ 9). Two of these colleagues — Nicholas Bonnet and Vanessa Perez — stated they had observed Moreira sleeping on April 30, 2014. (*See id.* ¶ 11). These same two employees and a third employee — Edwin Perez — also stated they had observed Moreira sleeping on the job on other occasions. (*See id.*). For example, Vanessa Perez submitted a written statement asserting: "This is only one of many instances in which I have witnessed [Robert] sleeping at his desk. He sleeps regularly each week during his shift, for the last few months." (Investigation Report AA0000036). Moreira contends his colleagues' statements are untrue; yet, he acknowledged he had no reason to question their judgment or honesty at any time prior to these interviews. (*See* Moreira Dep., vol. I, 152:3–153:6).

Based on this investigation, Davis concluded by sleeping on the job, Moreira violated American's Rules of Conduct, which is a ground for immediate termination. (*See* Def.'s SMF ¶ 13). Rather than terminate Moreira, Davis gave him another chance by issuing him a Career Decision Day ("CDD") letter, which gave Moreira a paid day off to choose one of the following options: (1) sign a letter of commitment to comply with company rules; (2) resign with transition benefits; or (3) terminate his own employment with the option to grieve the discharge. (*See id.* ¶

14; *see also* Investigation Report AA0000049–51). The letter of commitment required Moreira to acknowledge he had a performance problem and agree to immediately correct it by complying with all company standards, or face discharge without further warning. (*See* Investigation Report AA0000051). Further, Davis informed Moreira if he chose to remain at American, due to the circumstances, she would assign him to work midnight shifts as a Staff Support Coordinator. (*See id.* AA0000003). The CDD letter stated if Moreira failed to respond, he would be deemed to have selected termination. (*See* Def.'s SMF ¶ 14; *see also* Investigation Report AA0000050).

On May 15, 2014, Moreira chose not to respond to the CDD letter and thereby terminated his employment with American. (*See* Def.'s SMF ¶ 15). American had a grievance process for non-management employees like Moreira, which allowed employees to appeal terminations. (*See id.* ¶ 16). Plaintiff appealed his termination and Deon Lawrence ("Lawrence"), the Director of Line Maintenance at Miami International Airport, heard his appeal.[3] (*See id.*). Moreira claims he informed Lawrence about "all the situation [sic]" — presumably including his alleged disability, but "it was ignored." (Moreira Dep., vol. II, 276:7–10). On July 1, 2014, after meeting with Moreira and reviewing the Rules of Conduct and investigation file, Lawrence determined the CDD letter was justified and denied Moreira's appeal. (*See* Def.'s SMF ¶ 16).

On August 7, 2014, Moreira filed a charge with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination and retaliation. (*See id.* ¶ 26; *see also* EEOC Charge of Discrimination [ECF No. 64-5]). Based on these same facts, the EEOC dismissed Moreira's charge, finding insufficient grounds for his claims. (*See* Def.'s SMF ¶ 26; *see also* Moreira Dep., vol. II, 291:1–19). On April 13, 2015, Moreira filed a complaint [ECF No. 1-2] against American in state court, which American removed to federal court on May 14, 2015. (*See generally* Defendant's Notice of Removal [ECF No. 1]).

---

[3] Moreira notes Lawrence works in the same department and at the same level as Davis. (*See* Resp. 4).

On May 27, 2015, Moreira filed a First Amended Complaint alleging: (1) disability discrimination in violation of the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760 ("FCRA") ("Count I"); (2) retaliation in violation of the FCRA ("Count II"); and (3) wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. section 201 ("FLSA"), specifically unpaid overtime and/or minimum wages ("Count III"). (*See generally* FAC). In support of his FLSA claim, Moreira alleges "during the time period from February 2011 through May 15, 2014, Defendant failed to compensate Plaintiff the required overtime and/or minimum wages at a rate of one and a half times, or half of, Plaintiff's regular rate of pay for all hours worked in excess of forty (40) within a single work week." (*Id.* ¶ 14). Specifically, Moreira claims American improperly utilized a "compensatory time plan," that deprived him of full legal compensation. (*Id.* ¶ 16). Moreira seeks declaratory relief; back pay; benefits' adjustment; prejudgment interest; compensatory damages; reinstatement to his previous position; actual damages and liquidated damages for unpaid overtime and/or minimum wage; attorney's fees and costs; and additional relief deemed just and proper by the Court. (*See generally id.*).

## II.   LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990). "An issue of fact is

material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (alteration added) (quoting *Celotex*, 477 U.S. at 322 (alterations and internal quotation marks omitted)).

### III. ANALYSIS

American seeks summary judgment on all counts, asserting: (1) Moreira is not disabled and American did not discriminate against him; (2) Moreira cannot establish any of the required elements for a *prima facie* case of disability retaliation; and (3) as an employee of an air carrier, Moreira is exempt from the FLSA's overtime provisions. (*See* Mot. 6).

### A. Count I: Disability Discrimination Claim

To establish a *prima facie* case of disability discrimination under the FCRA, Moreira must demonstrate he was: (1) disabled; (2) qualified to perform his job; and (3) subject to unlawful discrimination because of his disability. *See Goldsmith v. Jackson Mem'l Hosp. Pub. Health Trust*, 33 F. Supp. 2d 1336, 1339 (S.D. Fla. 1998) ("The threshold issue before the Court is whether [the plaintiff] has established a *prima facie* violation of the [Americans with Disabilities Act] ADA and FCRA. To meet this threshold, [the plaintiff] must present evidence that he (1) has a 'disability;' (2) is a 'qualified' individual; and (3) was discriminated against because of the 'disability.'" (alterations added and footnote call number omitted)), *aff'd sub nom. Goldsmith v. Jackson Mem'l Hosp.*, 198 F.3d 263 (11th Cir. 1999).[4] The Court declines to address whether Moreira is disabled, because, even if he is, the record is clear Moreira was not subjected to unlawful discrimination because of his disability.

Moreira asserts American discriminated against him by failing to accommodate his purported disability; treating him differently than the other staff assistants; and ultimately terminating him. (*See generally* FAC). To succeed on a claim of disability discrimination, the plaintiff must show the decision-maker of the adverse employment action was aware of the disability. *See Stanley v. Lockheed Martin Corp.*, No. 6:11-CV-1649-ORL-36, 2013 WL 3974655, at *5 (M.D. Fla. Aug. 1, 2013) ("Indeed, the Eleventh Circuit has affirmed summary judgment where the decision makers of an adverse employment action were unaware of plaintiff's disability"); *see also Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1175 (11th Cir. 2005) (noting an employer cannot be liable under the ADA for firing an employee when it had no knowledge of the disability and plaintiff failed to show the relevant decision maker knew about

---

[4] Generally, claims brought under the FCRA are analyzed under the same framework as claims under the ADA. *See Spears v. Creel*, 607 F. App'x 943, 944 n.1 (11th Cir. 2015).

her alleged disability). Further, statements revealing a general health problem are not sufficient to put an employer on notice of an employee's disability. *See Richio v. Miami-Dade Cnty.*, 163 F. Supp. 2d 1352, 1362–64 (S.D. Fla. 2001).

Moreira never directly informed Davis about his muscle spasms; he simply told her he was going to physical therapy.[5] (*See* Moreira Dep., vol. II, 198:12–14). While Moreira states he informed Beil about his spasms, Beil herself did not make the determination to offer Moreira the CDD letter or deny his purported requests for accommodation. (*See* Def.'s SMF ¶¶ 14, 21–24 (describing how Davis was the one responsible for issuing Moreira's CDD letter and deciding whether to grant Moreira's requests)). Beil or any other employee's actual knowledge of Moreira's purported disability may not be imputed to Davis or American. *See Cordoba*, 419 F.3d at 1175 (noting an employee's knowledge of the plaintiff's disability could not be imputed to the store operations manager who made the adverse employment decision, where the manager herself had no such knowledge of plaintiff's disability); *see also Scott v. Shoe Show, Inc.*, 38 F. Supp. 3d 1343, 1360 (N.D. Ga. 2014) ("It is well established in this Circuit that a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee because of that disability." (quoting *Williamson v. Clarke Cnty. Dep't of Human Res.*, 834 F. Supp. 2d 1310, 1322–23 (S.D. Ala. 2011) (internal citations and quotation marks omitted))).

---

[5] Davis may have become more aware of Moreira's alleged disability *after* she began the disciplinary process against him. The record indicates Moreira's May 6, 2014 statement briefly referred to his condition, stating: "in the past, even during a time where [sic] I was suffering a chronic condition of neck muscle spasms, in which I was going through therapy and strong medications, I came to work and always completed my work efficiently." (Investigation Report AA0000025 (alteration added)). However, this statement is insufficient to put Davis on notice of Moreira's alleged disability because it: (1) does not indicate Moreira was disabled at the time he wrote the statement, but simply states he was suffering from this condition "in the past"; and (2) does not refer to any of Moreira's purported requests for accommodation. *See Richio*, 163 F. Supp. 2d at 1362–64 (statements revealing a general health problem are not sufficient to put an employer on notice of an employee's disability). Furthermore, Davis had already initiated the disciplinary process when this information came to light, diminishing any argument Moreira could make that her reaction to the sleeping incident was motivated by disability-related animus.

Likewise, Moreira cannot rely on his statement he filed FMLA paperwork describing his condition to prove Davis had notice of his purported disability. First, Moreira's testimony indicates this paperwork may have never been received by American's Lost Time Department. (*See* Moreira Dep., vol. II, 273:10–13). Second, Moreira's doctor purportedly sent this paperwork to Maceo-Chavez, and Moreira presents no facts indicating Davis would have been aware of such documents.[6] *See Scott*, 38 F. Supp. 3d at 1360; (*see also* Resp. 2–3).

To the extent Moreira attempts to state a "failure to accommodate" violation based on American's refusal to hire additional employees or move him to a new desk, this claim also fails. The duty to accommodate is triggered only when an individual makes a request that is direct, specific, and identifies how it is linked to his disability. *See Stanley*, 2013 WL 3974655, at *11 ("request for accommodation must be direct, specific, and identify how it is linked to [a] disability" (alteration added)). Moreira provides no evidence he requested Davis hire additional employees to help him with his workload *because of his purported disability*. (*See* Def.'s SMF ¶ 21). As stated, Moreira never even directly informed Davis about his muscle spasms; he simply told her he was going to physical therapy. (*See* Moreira Dep., vol. II, 198:12–14). Thus, Moreira did not link this alleged request for accommodation to a disability, as required. *See Stanley*, 2013 WL 3974655, at *11.

Moreira also did not inform Davis he desired to move to a different desk *because of his purported disability*. (*See* Def.'s SMF ¶ 21). In fact, Davis recollects Moreira simply wanted to move desks because he did not like being up at the front window. (*See* Davis Dep. 60:7–15).

---

[6] Nor should Moreira's FMLA paperwork be construed as a request for accommodation. *See Jenks v. Naples Cmty. Hosp., Inc.*, 829 F. Supp. 2d 1235, 1253 (M.D. Fla. 2011) (finding the plaintiff's FMLA documents, which showed fatigue was a side effect of the plaintiff's condition, did not constitute a request for a reasonable accommodation because the plaintiff never made a specific request to the defendants based on this fatigue, *i.e.*, requesting breaks throughout the workday; and a request for accommodation "must be specific.").

Further, Davis granted Moreira's request for a keyboard drawer; and Moreira acknowledges this drawer alleviated most of the issues he had experienced with his desk, and he made no additional requests to move desks. (*See* Moreira Dep., vol. II, 170:10–174:12).

Because Moreira fails to present a genuine dispute that Davis or American was aware of his purported disability, and further fails to show he linked his requests for accommodation to this disability, summary judgment is appropriate on Moreira's claim for disability discrimination under the FCRA.

### B.  Count II: Retaliation Claim

To establish a *prima facie* case of disability retaliation, Moreira must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.[7] *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260–61 (11th Cir. 2001). The Court need not address the second and third of these factors, because Moreira cannot establish the first — that he was engaged in statutorily protected expression.

To satisfy the "statutorily protected expression" element of a retaliation claim under the FCRA, the plaintiff must demonstrate he "has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C.A. § 2000e-3]." *Alford v. Florida*, 390 F. Supp. 2d 1236, 1252 (S.D. Fla. 2005) (alteration added) (quoting *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1012 (11th Cir.1989)). It is not necessary that an employer actually have engaged in an unlawful employment practice; a case of retaliation can be established if it is shown the employee simply had a reasonable belief the employer was engaged in unlawful

---

[7] Claims of retaliation in violation of the ADA, and therefore FCRA, are analyzed under the same framework that courts employ for retaliation claims arising under Title VII. *See Reis v. Universal City Dev. Partners, Ltd.*, 442 F. Supp. 2d 1238, 1252 (M.D. Fla. 2006).

employment practices. *See id.* Thus, even if the employer's conduct was lawful, a plaintiff has engaged in "statutorily protected activity" when he or she opposes the employer's conduct if the plaintiff demonstrates a "good faith, reasonable belief" that the employer's conduct was unlawful. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). Further, an employee who exercises his right to request a reasonable accommodation for a disability engages in statutorily protected expression. *See Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1335–36 (M.D. Ala. 2002) (finding an employee engages in statutorily protected expression, satisfying the first element of an ADA retaliation claim, by requesting a reasonable accommodation for an ADA disability).

Moreira appears to assert American retaliated against him because of his purported requests for disability accommodations. (*See* FAC ¶¶ 8–10). Yet, as noted *supra*, Moreira fails to establish Davis was even aware of his disability at the time he made such requests for accommodation. (*See* Moreira Dep., vol. II, 198:12–14). Further, Moreira never linked his requests for accommodations to his purported disability. (*See* Def.'s SMF ¶ 21). Accordingly, Moreira has failed to establish his purported requests for disability accommodations amount to statutorily protected expression. *See Wingfield v. S. Univ. of Florida, Inc.*, No. 8:09-CV-01090-T-24-TBM, 2010 WL 2465189, at *12 (M.D. Fla. June 15, 2010) (finding an employee's request for accommodation was not "statutorily protected" because she did not adequately inform her employer about her disability).

Because Moreira fails to set forth genuinely disputed facts regarding whether he engaged in "statutorily protected activity" under the FCRA, he cannot make out a *prima facie* case of retaliation, and summary judgment on this count is appropriate.

### C. Count III: FLSA Claim

The FLSA generally requires employers to pay premium overtime provisions to employees who work in excess of 40 hours per week. *See* 29 U.S.C. § 207. There are specific exceptions, however, to the overtime requirements, including an exemption for "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act" ("RLA"). *Id.* § 213(b)(3). Those subject to the RLA include "every common carrier by air engaged in interstate or foreign commerce . . . ." 45 U.S.C. § 181 (alteration added).

Even when an air carrier is subject to the RLA, not all of its employees are necessarily exempted from the FLSA overtime provision. *See Slavens v. Scenic Aviation, Inc.*, No. 99-4197, 2000 WL 985933, at *2 (10th Cir. 2000). The RLA was not intended to apply to all types of work, regardless of the connection to transportation, just because the company conducting the work performed some carrier activities within its company functions. *See Northwest Airlines, Inc. v. Jackson*, 185 F.2d 74, 77 (8th Cir. 1950). Rather, the RLA "was intended to apply only to transportation activities and that work which bears more than a tenuous, negligible and remote relationship to the transportation activities [of the employer]." *Slavens*, 2000 WL 985933, at *2 (internal citations and quotation marks omitted; alteration in original).

American asserts Moreira's FLSA claim for overtime wages is meritless, as American qualifies as an air carrier whose employees are subject to the FLSA's exemption.[8] (*See* Mot. 14 ("American holds an Air Carrier Certificate from the Federal Aviation Administration, which authorizes American to operate as a common carrier by air")); *see also Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1354 (S.D. Fla. 2004) ("American Airlines is an air carrier governed

---

[8] While Moreira technically included an FLSA minimum wage claim in addition to his overtime claim within Count III of the First Amended Complaint (*see* FAC ¶ 37), neither party addresses this claim in its filings, and Moreira makes no attempt to maintain it in his Response. (*See generally* Resp.; *see also* Mot.). Thus, the Court similarly directs its analysis to the FLSA overtime claim.

by the RLA"). Thus, American argues Moreira, as an employee of an air carrier subject to the RLA, is barred from bringing an overtime compensation claim under the FLSA. (*See* Mot. 14–15 (citing *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002) (affirming summary judgment for the defendant in an FLSA overtime claim brought by cargo loadmasters, finding "the statutory language is certainly unambiguous"))).

American also responds to an earlier argument raised by Moreira (*see* Plaintiff's Response in Opposition . . . [ECF No. 23] 2–4), in which Moreira contended the section 213(b)(3) exemption does not apply because Moreira's job duties — which mostly consisted of administrative work — were only tenuously connected to the air carrier's transportation activity. (*See* Mot. 15). American asserts the exemption broadly covers employees serving a variety of functions for air carriers, including administrative work. (*See id.* 15–16 (citing *Slavens*, 2000 WL 985933, at *2 (air carrier employee whose duties were "primarily focused on evaluating the medical background of potential medical staff for proper qualifications, establishing medical protocols, establishing company policies and procedures, informing hospitals of the services and resolving personnel disputes" performed functions integral to the air carrier's service and fell under under the FLSA's air carrier exemption))). Thus, American contends the exemption is certainly broad enough to cover Moreira's activities, as he was responsible for processing payroll matters for mechanics, without whom the airline could not function. (*See id.* 16).

In his Response, Moreira does not address his FLSA claim at all. (*See generally* Resp.). In fact, in an earlier filing, Moreira intimates he desires to drop the overtime hours claim and even states he never intended to file that claim in this lawsuit, but his former attorneys counseled him to do so. (*See* Plaintiff's Mediation Summary [ECF No. 59] ¶¶ 6–7 (stating "[my former attorneys] also asked me if I had worked overtime and requested my pay stubs. It was not my

original interest to claim overtime hours. . . . I proceed [sic] to explain the Defendant side [sic], that I wanted to drop the overtime hours claim . . . .") (alterations added)). While it appears Plaintiff has no interest in further prosecuting his FLSA claim, the Court nonetheless analyzes the issue for the purpose of completeness.

The Court finds American is an air carrier governed by the RLA. *See Caravello*, 315 F. Supp. 2d at 1354. Further, Moreira's job-related duties certainly bore more than a "tenuous, negligible and remote relationship to the transportation activities [of the employer]." *Slavens*, 2000 WL 985933, at *2 (internal citations and quotation marks omitted; alteration in original); *see also Marshall v. Pan Am. World Airways, Inc.*, No. 75-394-ORL-CIV, 1977 WL 1772, at *5 (M.D. Fla. Aug. 8, 1977) (giving examples of air carrier employees who would *not* be exempted under the FLSA, including employees of a carrier engaged in the operation of a hotel or a shoe factory). Unlike the examples set forth in *Marshall*, Moreira's work as a Staff Assistant-Production Support employee in the Aircraft Maintenance Department at Miami International Airport, assisting mechanics with their administrative questions (*see* Def.'s SMF ¶¶ 2–3), was critical to American's operation as an airline. Thus, because Moreira was an employee of American whose work was integral to American's transportation-related activity, he falls under the FLSA's overtime exemption covering "any employee of a carrier by air subject to the provisions of title II of the [RLA]." 29 U.S.C. § 213(b)(3) (alteration added). As Moreira neither makes any arguments to the contrary nor raises any genuinely disputed issues of fact on this claim (*see generally* Resp.), summary judgment on Count III is appropriate.

## IV.   CONCLUSION

Moreira has not provided evidence to demonstrate American violated the FCRA or the FLSA, nor has he presented any genuinely disputed issues of material fact precluding summary

judgment. Even construing the facts in the light most favorable to Moreira, the Court finds summary judgment is appropriate on all counts. Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 63]** is **GRANTED**. Final **j**udgment for Defendant, American Airlines, Inc. will be entered by separate order. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of January, 2016.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record
   Robert Moreira, *pro se*